**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RYAN BUTTON, on behalf of himself and those similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DOLGENCORP, LLC<br>d/b/a DOLLAR GENERAL,<br><br>    Defendant. | Civil Action No. 22-7028 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant Dolgencorp, LLC's ("Dollar General" or "Defendant") Motion to Compel Individual Arbitration and Stay Proceedings (ECF No. 53) for all claims in Plaintiff Ryan Button's ("Plaintiff") Second Amended Complaint ("Amended Complaint")[1] (ECF No. 52). Plaintiff opposed (ECF No. 58), and Defendant replied (ECF No. 61). After careful consideration of the parties' submissions, the Court decides Defendant's motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendant's Motion to Compel Individual Arbitration and Stay Proceedings is granted.

---

[1] Plaintiff refers to ECF No. 52 as the Second Amended Complaint despite having never filed a First Amended Complaint. For ease of reference, the Court will refer to the operative complaint as the "Amended Complaint."

## I. BACKGROUND

### A. Factual Background

Plaintiff currently resides in Cliffwood Beach, New Jersey. (Am. Compl. ¶ 7, ECF No. 52.) Defendant is the sole legal entity operating Dollar General in the State of New Jersey and has a principal place of business in Tennessee. (*Id.* ¶ 8.) Dollar General operates stores that offer inexpensive products. (*Id.* ¶ 10.) Plaintiff and those similarly situated are those who shop at Dollar General stores in New Jersey. (*Id.* ¶ 9.)

Plaintiff regularly shops at the Dollar General store located at 228 NJ-35, Keyport, New Jersey. (*Id.* ¶ 29.) On January 11, 2022, Plaintiff enrolled in a Dollar General Account ("DG Account"), which allows a customer to access coupons, promotions, and other discounts. (Def.'s Moving Br., Decl. of Sarah Gernux ¶¶ 8, 11, ECF No. 53-2.) To create that account, Plaintiff was required to agree to certain terms and conditions ("Terms") and a privacy policy. (*Id.* ¶¶ 14-16.) Plaintiff consented to Dollar General's updated Terms by clicking an "I accept" button in September 2022, October 2022, and December 2023. (*Id.* ¶ 18.) Within these Terms was an arbitration agreement with a delegation provision:

> YOU AND DOLLAR GENERAL AGREE THAT IN THE EVENT OF ANY CLAIM, DISPUTE, OR CONTROVERY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE WEBSITES AND/OR APP, OR THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS (INCLUDING THE PRIVACY POLICY) (COLLECTIVELY, 'CLAIM'), SUCH CLAIM WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION . . . .

(Def.'s Moving Br., Ex. D ("Ex. D")[2] at *12, ECF No. 53-6.)[3] The Terms also included a class action waiver:

> YOU UNDERSTAND AND AGREE THAT THE MAKING OF CLAIMS OR RESOLUTION OF DISPUTES PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(*Id.* at *13.)

In early 2022, Plaintiff started noticing discrepancies between the price of merchandise displayed on store shelves and what he was charged at checkout, and he began documenting these discrepancies. (Am. Compl. ¶¶ 30, 32, 35-36.) From May 2022 through July 2022, the pricing discrepancies included: (1) a collective overcharge of $1.30 for three separate items on June 16, 2022; (2) an overcharge of $0.25 for a single item on June 21, 2022; (3) an overcharge of $0.05 for a single item on June 23, 2022; (4) a collective overcharge of $1.05 for three separate items on June 28, 2022; and (5) a collective overcharge of $0.85 for two separate items on July 1, 2022. (*Id.* ¶ 37.)[4]

---

[2] Plaintiff does not object to Defendant's exhibits of different versions of the Terms attached to its moving brief and in fact cites to Defendant's exhibit of the June 2023 version of the Terms (Ex. D) to support his arguments in his opposition brief. (*See, e.g.*, Pl.'s Opp'n Br. 1, n.1, n.2, ECF No. 58.) The Court, therefore, also cites to Ex. D when referring to the Terms.

[3] All numbers preceded by an asterisk refer to the ECF page numbers in the heading of the document.

[4] Separately, Dollar General was "audited by various Department of Weights and Measures ("DWM") in New Jersey" and cited for price misrepresentation. (Am. Compl. ¶¶ 13-16, 18-24.)

B.  **Procedural Background**

Plaintiff commenced this class action lawsuit on October 6, 2022, in the Superior Court of New Jersey, Law Division, Monmouth County, and Defendant removed this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) on December 5, 2022. (*See generally* Notice of Removal, ECF No. 1.) Defendant filed a motion to seal on December 19, 2022. (ECF No. 13), which the Court granted on January 11, 2023 (ECF No. 32).

On December 27, 2022, Defendant filed a motion to dismiss. (ECF No. 27.) Approximately three weeks later, Plaintiff moved to remand, or in the alternative, for jurisdictional discovery. (ECF No. 33.) Upon request of the parties, the Court stayed the motions to dismiss[5] pending the disposition of Plaintiff's motion to remand. (ECF No. 36.) The Court denied the motion to remand on August 9, 2023. (ECF Nos. 46-47.) Plaintiff requested a stay on August 16, 2023, pending the disposition of Plaintiff's anticipated request to appeal the Court's denial of his motion for jurisdictional discovery. (ECF No. 48.) Two days later, the Court granted the stay. (ECF No. 49.) There was no activity in the case for approximately ten months. Then on June 11, 2024, the parties submitted a stipulation to permit Plaintiff to file an amended complaint. (ECF No. 50.) The Court so-ordered the stipulation the next day. (ECF No. 51.)

Plaintiff filed his Amended Complaint on June 21, 2024, seeking declaratory judgment and injunctive and monetary relief, alleging that Defendant violated: (1) the New Jersey General Advertising Regulations (Am. Compl. ¶¶ 70-85); (2) the New Jersey Consumer Fraud Act

---

[5] The original complaint named six defendants: (1) Dollar General Corporation; (2) Dolgencorp, LLC; (3) Todd Vasos; (4) Jeff Owen; (5) Steve Sunderland; and (6) Emily Taylor. (ECF No. 1-1.) Defendant's motion to dismiss was submitted jointly with Dollar General Corporation (ECF No. 27), while the other four defendants submitted a separate motion to dismiss (ECF No. 26).

("NJCFA") (*id.*); and (3) the Truth-In-Consumer Contract, Warranty, and Notice Act (*id.* ¶¶ 86-102).

Defendant filed the instant Motion to Compel Arbitration and Stay Proceedings pending the resolution of arbitration pursuant to the Federal Arbitration Act ("FAA"). (Def.'s Moving Br., ECF No. 53-1.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 58), and Defendant replied (Def.'s Reply Br., ECF No. 61).

## II. **LEGAL STANDARD**

The FAA, 9 U.S.C. § 1, *et seq.*, authorizes federal courts to compel arbitration and stay proceedings pending arbitration. It provides that "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The statute "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999)). The Third Circuit has long recognized that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. The "unmistakably clear congressional purpose" behind the FAA is "that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is

limited to staying the civil action and compelling the parties to arbitrate. *John Hancock Mut. Life Ins. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998). A district court does, however, hold "the authority to grant interim relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief" and so long as the "traditional prerequisites for such relief are satisfied." *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811, 812 (3d Cir. 1989). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that[:] (1) there is an agreement to arbitrate[;] and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

## III. **DISCUSSION**

Defendant asserts that the Court should compel Plaintiff's claims to individual arbitration because the parties formed a contract to arbitrate with a valid delegation provision. (*See* Def.'s Moving Br. 4-9.) Defendant further argues that even if the Court looks past the delegation provision, the parties entered into an enforceable arbitration agreement that encompasses Plaintiff's claims. (*Id.* at 9-13.)

Plaintiff opposes Defendant's Motion to Compel Arbitration for three reasons. First, Plaintiff argues that Defendant waived its right to arbitrate because it has engaged extensively in the litigation process. (Pl.'s Opp'n Br. 3-8.) Second, Plaintiff argues that the arbitration agreement and delegation clause are unenforceable because they are unconscionable and illusory. (*Id.* at 8-24.) Third, Plaintiff argues that his claims are not covered by the scope of the arbitration agreement or Terms. (*Id.* at 24-28, 33-40.) Defendant disagrees and argues that: (1) the arbitration agreement is not ambiguous or unenforceable; and (2) it did not waive its right to arbitrate. (Def.'s Reply Br. 5-7, 9-11.) The Court will address the parties' arguments, in turn.

### A. Whether the Parties Entered an Arbitration Agreement

"Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). Here, the parties do not dispute that they entered into an arbitration agreement. (Def.'s Moving Br. 1; *see generally* Pl.'s Opp'n Br.)

### B. Whether Defendant Waived Arbitration

#### 1. *The Court Decides the Issue of Waiver*

Plaintiff argues that despite there being an arbitration agreement, Defendant has nonetheless waived its right to arbitrate through its actions in this litigation. (Pl.'s Opp'n Br. 3-8.) As a threshold issue, the Court must determine whether it can decide the issue of waiver, or whether this issue has been delegated to arbitration. Defendant argues that the plain language of the Terms in the DG Account delegate the issue of waiver to arbitration. (Def.'s Moving Br. 7-8.) The delegation clause states in relevant part:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH . . . THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS . . . WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION.

(Ex. D at *12.)

The Court finds that it, not an arbitrator, must determine whether Defendant waived its right to arbitrate. Here, there is no reference to waiver of arbitration in the delegation clause, and the contract's silence cannot be interpreted as giving the power to an arbitrator rather than the Court. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007). "Because the

7

[Terms do] not contain a clear and unmistakable intent for the issue of waiver to be delegated to an arbitrator, the issue of waiver is for the Court to decide." *Coronel v. Bank of Am., N.A.*, No. 19-8492, 2022 WL 3443985, at *4 (D.N.J. Aug. 17, 2022); *see also Ehleiter*, 482 F.3d at 221 (holding the issue of "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide").

### 2. *Defendant Did Not Waive Arbitration*

Plaintiff argues that Defendant waived its right to arbitration because it "participated extensively in the litigation process" and waited nineteen months before filing the instant motion. (Pl.'s Opp'n Br. 4-8.) Defendant argues in opposition that the parties have not engaged in extensive litigation or discovery, which is required for waiver, and Plaintiff's own requested stays caused the nineteen-month delay. (Def.'s Reply Br. 9-11.)

The Supreme Court has held that courts may not adopt arbitration-specific rules when determining whether a party has waived its right to arbitrate. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 413-14 (2022); *White v. Samsung Elec. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (noting that "the inquiry for waiver of arbitration rights must be identical to the inquiry for waiver of other contractual rights"). Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Waiver is informed by the "circumstances and context of each case." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011).

Plaintiff argues that the length of the delay—nineteen months—before Defendant filed the instant motion weighs in favor of waiver. (Pl.'s Opp'n Br. 6-7.) While the length of the delay does weigh in favor of waiver, it is not determinative. *See Russo v. Trans Union, LLC*, No. 19-4007, 2020 WL 4937108, at *5 (E.D. Pa. Aug. 24, 2020). Untimeliness in filing a demand for arbitration

8

can be justified by explaining the delay to the court. *See Gray Holdco, Inc.*, 654 F.3d at 454. Here, Defendant explained its delay by pointing to two separate stays of the litigation. The first stay was to litigate Plaintiff's motion to remand or compel jurisdictional discovery (ECF No. 36), and the second was to appeal the denial of that motion (ECF No. 49). Those two stays account for approximately sixteen months of the litigation. The Court, therefore, finds that the length of time before Defendant raised arbitration is largely neutral, given that much of the time was spent not litigating the case, but rather with the case stayed. *Cf. JPMorgan Chase Bank, N.A. v. Republic Mortg. Ins.*, No. 10-6141, 2012 WL 6005384, at *4 (D.N.J. Nov. 30, 2012) (noting that a substantial delay is not dispositive, but it can be troubling coupled with a failure to justify the delay).

Plaintiff relies on two main cases to support his argument that Defendant waived its right to arbitrate. (*See* Pl.'s Opp'n Br. 4-8.) First, in *Laguna v. Chester Housing Authority*, the court found that the defendant waived its right to arbitrate because it engaged in litigation for ten months, including: (1) filing a motion to dismiss on the merits that the court "mostly denied"; (2) filing an answer; (3) meeting and conferring about a joint Rule 26(f) Report; and (4) exchanging initial disclosures and written discovery before mentioning arbitration. 662 F. Supp. 3d 545, 546-47 (E.D. Pa. 2023). The court found that the defendant waived arbitration by demonstrating a commitment to litigate through its active participation in the case. *Id.* at 548. Second, in *Coronel*, the court held that the defendant's motion to arbitrate, which was raised after eighteen months of litigation, was untimely because defendant expressed an intent to litigate by participating in discovery conferences and depositions. 2022 WL 3443985, at *5.

The Court finds both *Laguna* and *Coronel* distinguishable from the instant facts because the defendants in both of those cases participated more extensively in the litigation, including

9

discovery. Here, Defendant filed a motion to seal, a motion to dismiss, an opposition to Plaintiff's motion to remand, and a stipulation to permit Plaintiff to file an amended complaint before filing the instant motion to compel arbitration. The only motion on the merits was the motion to dismiss, and while filing a substantive motion without mentioning arbitration does weigh in favor of waiver, it is not dispositive. *See White*, 61 F.4th at 340 ("[M]otions to dismiss will not always evince an intent to litigate instead of arbitrate.") The Court finds that filing the motion to dismiss did not waive Defendant's right to arbitration here, where the motion was never fully briefed or decided by the Court. *Cf. Laguna*, 662 F. Supp. 3d at 547 (finding waiver where defendant's motion to dismiss on the merits had been "mostly denied"). The Court further finds that the other non-merit motions are not sufficient to find waiver, where Defendant did not file an answer, engage in initial discovery, depositions, or otherwise "extensively participat[e] in this litigation," before filing the instant motion. *See Coronel*, 2022 WL 3443985, at *6; *Taylor v. CDS Advantage Sols.*, No. 20-2803, 2024 WL 1048124, at *9 (D.N.J. Mar. 9, 2024) (granting defendant's motion to compel arbitration where the parties had "not engaged in any discovery to date"); *Valli v. Avis Budget Rental Car Grp.*, No. 14-6072, 2024 WL 4349747, at *6 (D.N.J. Sept. 30, 2024) ("Waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." (quoting *Nino*, 609 F.3d at 208)). Considering the "circumstances and context" unique to the facts of this case, Defendant did not intentionally relinquish its known right to arbitrate. *White*, 61 F.4th at 339.

    **C.**     **Whether the Issue of Arbitrability Has Been Delegated**

Next, the Court must determine whether the parties delegated the issue of arbitrability through the delegation clause.

### 1. *Challenges to the Delegation Clause*

Plaintiff argues that the delegation clause, as well as the rest of the arbitration agreement, are unenforceable for two reasons: (1) the arbitration agreement prospectively waives Plaintiff's rights under the NJCFA; and (2) they are illusory because Defendant retained the right to unilaterally amend the entire agreement. (Pl.'s Opp'n Br. 8.) Plaintiff additionally argues that the entire agreement, including the delegation clause, is unconscionable and unenforceable. (*Id.* at 11-24.)

On reply, Defendant argues that Plaintiff "superficially calls the delegation clause unenforceable, [but] his substantive arguments 'go only to enforceability of the arbitration agreement [and the Terms] as a whole.'" (Def.'s Reply Br. 4 (quoting *Brice v. Haynes Inv., LLC*, 13 F.4th 823, 836 (9th Cir. 2021)). Defendant argues, therefore, that because Plaintiff does not specifically challenge the delegation clause, his challenge should be rejected. (*Id.* at 4-5.)

A delegation clause "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). There are two types of challenges to the validity of a delegation clause. *Id.* at 70. "'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). When determining whether an arbitration agreement is enforceable, courts may only address the first type. *Id.*

As such, "unless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any

challenge to the validity' of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (quoting *Rent-A-Ctr.*, 561 U.S. at 72)). But "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) (citing *Rent-A-Ctr.*, 561 U.S. at 71; *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (explaining that "a delegation clause is severable from the underlying arbitration agreement such that it is separately entitled to FAA-treatment—that is, unless specifically (and successfully) challenged, the clause is in and of itself treated as a valid contract that must be enforced under the FAA's enforcement provisions"). To determine whether a party is specifically challenging a delegation provision, courts must look "beyond a party's 'statement that it is challenging the delegation provision' to 'the substance of the challenge.'" *Dobbs v. Health IQ Ins.*, No. 21-5276, 2022 WL 2974713, at *6 (E.D. Pa. July 27, 2022) (quoting *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021)). If a challenge to a delegation agreement "recycles the same arguments that pertain to the enforceability of the agreement as a whole," that challenge is not specific to the delegation provision. *Id.* (quoting *In re StockX*, 19 F.4th at 886).

Here, the Court agrees with Defendant that Plaintiff does not put forth challenges "directed specifically to the [delegation provision]." *Rent-A-Ctr.*, 561 U.S. at 71. Plaintiff first argues that the prospective waiver of statutory rights under the NJCFA, specifically the fee-shifting provision, renders the entire arbitration agreement, including the delegation clause, unenforceable because the waiver is not severable from the rest of the agreement. (Pl.'s Opp'n Br. 8, 16-17.) The Court finds, however, that this challenge is directed at the arbitration agreement as a whole, and there is not an "argument levied specifically towards the delegation clause." *Colon v. Conchetta, Inc.*,

No. 17-959, 2017 WL 2572517, at *4 (E.D. Pa. June 14, 2017) (explaining that "a valid delegation clause is severable from the remainder of the contract and is unaffected by the contract's validity"); *Rent-A-Ctr.*, 561 U.S. at 74 (finding plaintiff did not specifically challenge the delegation agreement where plaintiff "argued that the fee-sharing . . . procedures rendered the *entire* [a]greement invalid").

Second, Plaintiff argues that the provision in the Terms that allows Defendant to unilaterally amend the Terms renders the entire agreement, including the delegation clause, illusory. (Pl.'s Opp'n Br. 8, 10-11.) This argument squarely falls within the second type of challenge under *Rent-A-Center*, "a ground that directly affects the entire agreement." 561 U.S. at 70. As such, it is not a specific challenge to the delegation clause and should be decided by the arbitrator.

As to Plaintiff's arguments that the entire agreement, including the delegation clause, are unconscionable and unenforceable (Pl.'s Opp'n Br. 11-24), the Court similarly finds that the substance of Plaintiff's arguments do not relate to the delegation clause. In fact, for much of this argument, Plaintiff only mentions the delegation clause in headings. *See Dobbs*, 2022 WL 2974713, at *6 (granting motion to compel arbitration where "[p]laintiff's section heading assert[ed] that the delegation provision [wa]s illusory, [but] the substantive argument that he ma[de] in his brief d[id] not support his heading"). Plaintiff raises no arguments as to why the act of delegation of these issues would be improper. Since Plaintiff's arguments are not made specific to the delegation clause, the Court finds that those arguments are for the arbitrator to decide. *See Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 321 (3d Cir. 2024) (finding that where the plaintiff "did not directly challenge the delegation clause," the court could not consider arguments concerning the agreement's scope); *Colon*, 2017 WL 2572517, at *4 (finding that "arguments

regarding scope, whether the [a]greement is illusory, unconscionability, and any violation of [law] miss the mark" where there is a valid delegation clause).

### 2. *Scope of the Delegation Clause*

Even if the Terms and Agreement are enforceable, Plaintiff argues that the delegation provision does not cover Plaintiff's claims because the delegation clause does not delegate disputes as to the scope of the agreement. (Pl.'s Opp'n Br. 24-33.) Defendant argues in reply that Plaintiff attempts to make a "meaningless distinction" between "interpret[ing]" the arbitration agreement and determining its scope. (Def.'s Reply Br. 7.) The Court agrees. It is not clear here that the "arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64-65 (3d Cir. 2018) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Indeed, the interpretation of the agreement would necessarily also cover the scope of the agreement.

### 3. *Ambiguity of the Delegation Clause*

Plaintiff's last argument concerning the delegation clause is that the clause itself is ambiguous. (Pl.'s Opp'n Br. 28-33.) In particular, Plaintiff argues that the first paragraph of the delegation clause notes that any "such claim will be resolved *exclusively* by final and binding arbitration," while the second paragraph notes that Defendant must "*first* issue a notice which describes the nature and basis of the claim and meet and confer within a [sixty] day window *before* initiating arbitration proceedings" (*Id.* at 29.). Plaintiff also points to a portion of the agreement that contemplates a court ruling on the availability of public injunctive relief as inconsistent with a "clear and unmistakable" agreement to delegate questions of arbitrability. (*Id.* at 31-33.) Defendant argues in reply that neither provision contradicts the delegation clause because each

14

provision contains qualifying phrases that Plaintiff ignores. (Def.'s Reply Br. 6-7.) The Court agrees.

"[A] contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction; rather, [a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Simons v. Brown*, No. 20-1814, 2022 WL 296636, at *3 (3d Cir. Feb. 1, 2022) (citation and quotations omitted). As to the meet and confer provision, the Court recognizes that the delegation clause is qualified: "SUCH CLAIM WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION, *EXCEPT AS OTHERWISE SET FORTH IN THESE TERMS*." (Ex. D at *12 (emphasis added).) Similarly, the provision concerning injunctive relief states the following qualification:

> *NOTWITHSTANDING THE FOREGOING*, IF A COURT DETERMINES THAT PUBLIC INJUNCTIVE RELIEF MAY NOT BE WAIVED AND ALL APPEALS FROM THE DECISION HAVE BEEN EXHAUSTED, THEN THE PARTIES AGREE THAT THIS ARBITRATION AGREEMENT SHALL SURVIVE AND ANY CLAIM FOR PUBLIC INJUNCTIVE RELIEF SHALL BE STAYED PENDING ARBITRATION OF THE REMAINING CLAIMS.

(Ex D. at *13 (emphasis added).) Because there are the qualified "except . . ." and "notwithstanding . . ." clauses the Court finds that there is no ambiguity between the meet and confer clause and the provision concerning injunctive relief, and the delegation clause. Rather, the qualifiers make the delegation provision compatible with the other provisions. *Cf. Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (explaining that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section"). The Court, accordingly, finds that the delegation clause is not ambiguous.

15

Based on the foregoing, the Court grants Defendant's motion to compel arbitration.

**D.     Stay Proceedings**

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court, accordingly, stays the proceeding pending arbitration.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay Proceedings is granted.[6] The Court will issue an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[6] Because the Court grants Defendant's Motion to Compel Arbitration and Stay Proceedings, the Court will dismiss Defendant's pending motion to dismiss (ECF No. 54) as moot. If the arbitrator determines that Plaintiff's claims are not arbitrable, and the parties move to reopen this case, Defendant may file a new motion to dismiss.